MAGNOLIA PETROLEUM CO.

v.

WILSON.

No. 4814.

United States Court of Appeals,
Tenth Circuit.

Aug. 13, 1954.

Rehearing Denied Sept. 13, 1954.

Robert W. Richards, Oklahoma City, Okl. (Earl A. Brown and Charles B. Wallace, Dallas, Tex., on the brief), for appellant.

Joe B. Thompson, Ardmore, Okl., for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal from the judgment of the trial court, cancelling the undeveloped portion of appellant's oil and gas lease. On May 12, 1917, Willie Wilson, a three-fourths blood Choctaw Indian, executed a departmental oil and gas lease to Edwin B. Cox, covering 310 acres of land situated in Sections 16, 21 and 27, Township 2 South, Range 2 West, the exact description of which need not be given. In 1920 Cox purchased 37½ acres of the land covered by the lease in Section 21. On October 2, 1925, Cox assigned his lease to the Magnolia Petroleum Company, the appellant herein, less the 37½ acres he had purchased in Section 21 and the 40 acres in Section 27. On April 1, 1926, Magnolia completed drilling of its well No. 1; on August 30, 1926, it completed its well No. 2; on September 21, 1926, it completed its well No. 3; on November 24, 1926, it completed its well No. 4; on November 16, 1927, it completed its well No. 5; and on April 23, 1927, it completed its well No. 6. These six wells were drilled on 10-acre tracts in the Southeast Quarter of the Southeast Quarter of Section 16 and in the North one-half of the Northeast Quarter of the Northeast Quarter of Section 21, all in Township 2 South, Range 2 West, in Carter County, Oklahoma. All these wells came in as producing wells and have from the beginning been and are now producing oil. No further wells were drilled by Magnolia until 1948, after it brought in a producing well on offsetting acreage to the acreage covered by its lease in Section 21. Thereafter, appellee, Willie Wilson, demanded of Magnolia that it drill an offset on his lease, which was done. This well was finished on December 28, 1948, as a dry hole. No further or additional wells have been drilled by Magnolia since.

On April 3, 1953, appellee, Willie Wilson, made a demand for additional development. In his demand he demanded that drilling operations for four addi-

**318**

tional shallow wells be begun within thirty days and that within sixty days drilling for a deep test well be commenced to explore and develop any and all strata and horizons under said land. Upon appellant's refusal to comply with the demand, this action for cancellation of the lease was instituted. At the conclusion of the trial, the trial court indicated that the lease would not be cancelled if appellant would indicate a willingness to undertake additional development. The court requested each defendant to advise within ten days whether or not he would comply with a conditional cancellation, granting them a reasonable time within which to begin the drilling of a well. Being advised by each defendant that no additional development would be undertaken, the court entered judgment cancelling the leases with respect to the undeveloped portion thereof. Edwin B. Cox, who owned some of the acreage covered by the lease affected by the cancellation judgment, has not appealed.

The right, duty and obligation of a lessee to diligently explore, develop and produce oil and gas from leased premises has been the source of prolific litigation. It has received the attention of courts in almost innumerable cases. The courts in general agree that since the problem sounds in equity the implied covenant to diligently explore, develop and produce oil and gas requires a consideration of the rights of both the lessor and the lessee, and that in the end the final determination resides with a court of equity and not alone with either the lessor or the lessee.[1]

The prudent operator rule is quite generally accepted as the standard of de-

termining the duty of a lessee to undertake additional development. In simple terms, it is that a lessee is not required to undertake additional development unless a prudent operator would do so, and whether a prudent operator would do so, is determined by whether there is reasonable expectation that the cost of additional wells as well as a reasonable profit on the investment might be returned.[2] Under this rule, before a lessor may have cancellation of the undeveloped portion of a lease, he must prove not only undue delay but also that further development could reasonably be expected to return a profit on the investment. This places a heavy burden and in some cases almost an insurmountable burden upon a lessor seeking cancellation. Some states have relaxed the rigidity of the prudent operator rule.

Since this case arises in Oklahoma, we are guided by the law of that state. In its early decisions, Oklahoma adhered to the strict prudent operator rule,[3] but the later cases in Oklahoma [4] clearly indicate a departure from the strict application of the prudent operator rule. The Doss and Colpitt cases set out in Footnote 4 were analyzed in our opinion in Gregg v. Harper-Turner Oil Co., supra, and such analysis is incorporated by reference herein. In the recent case of Texas Consolidated Oils v. Vann, 208 Okl. 673, 258 P.2d 679, 688, the Oklahoma Court referred to the Doss case as follows: "We construe our holding not to abrogate the prudent operator rule * * Like other rules of equity, the prudent operator rule is not inflexible. * * * The rationale of the cases leads us to the following conclusion: (1) Where in the

1. Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934; McKenna v. Nichols, 193 Okl. 526, 145 P.2d 957; Ferguson v. Gulf Oil Corp., 192 Okl. 355, 137 P.2d 940; Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801; Gregg v. Harper-Turner Oil Co., 10 Cir., 199 F.2d 1.

2. Trust Company of Chicago v. Samedan Oil Corp., 10 Cir., 192 F.2d 282; Pelham Petroleum Co. v. North, 78 Okl. 39, 188 P. 1069; Mercer v. American Oil & Refining Co., 173 Okl. 515, 49 P.2d 101; Ramsey Petroleum Corp. v. Davis, 184

Okl. 155, 85 P.2d 427; Gregg v. Harper-Turner Oil Co., 10 Cir., 199 F.2d 1.

3. Ramsey Petroleum Corp. v. Davis, 184 Okl. 155, 85 P.2d 427.

4. Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934; McKenna v. Nichols, 193 Okl. 526, 145 P.2d 957; Colpitt v. Tull, 204 Okl. 289, 228 P.2d 1000; Texas Consolidated Oils v. Vann, 208 Okl. 673, 258 P.2d 679; Trawick v. Castleberry, Okl., 275 P.2d 292, decided May 5, 1953.

Doss, McKenna, and Colpitt cases the additional development is long delayed a court of equity may, in a proper case, declare that the implied covenants of the lease for reasonable development have been breached and upon such finding cancel the undeveloped portion thereof. The decree is sustained by proof of mere lapse of time without more. (2) Where from all facts and circumstances the delay in the additional development is not long delayed, but additional development is demanded by the lessor, the reasonable operator rule will apply. Neither the lessor nor lessee is the arbiter of its application. The rule of law which this and other courts have uniformly followed is that the lessor must establish the fact that additional development in all reasonable probability will result in profit to the lessee, over and above the costs of the development." In Trawick v. Castleberry, supra, decided May 5, 1953, the lease sought to be cancelled was dated February, 1944. A well was drilled as a gas well. Later it ceased to produce gas and started producing oil. A small portion of the lease was taken into a unitized block. An action was brought to cancel the balance not taken in because of failure to develop. The opinion seems to make it clear that the doctrine announced in the Doss case is not repudiated but adhered to. It is pointed out that the facts in the Trawick case take it out of the rule announced in the Doss case. The court quotes from Magnolia Petroleum Company v. Rockhold, 192 Okl. 628, 138 P.2d 809, as follows: " 'Where production is obtained during the primary term of a lease, and it is disclosed that the lessee has failed and refused to fully develop the leasehold within a reasonable length of time and there has been unreasonable delay in development a prima facie case is made in an action by the lessor to cancel the undeveloped portions thereof and *the burden is upon the defendant lessee to show that the lease has been developed in the manner reasonably to be expected of an operator of ordinary prudence.*' " The court held that the undisputed evidence established that the well drilled on the acreage had not paid out and that the opinion of experienced oil men testifying was that additional wells on the lease in question would not be profitable. The court pointed out there was no conflict in the evidence. From an analysis of these cases, we conclude that the Doss case is still the rule in Oklahoma, as amplified in the Trawick case; that where there has been unreasonable delay in development a prima facie case for cancellation is made out and the burden then shifts to the lessee to establish that a prudent operator would not undertake further development.

The question for determination is whether the record supports the trial court's conclusion that, considering the equities and interest of the lessors as well as the lessees within the rule as announced by the Oklahoma Court, cancellation will be decreed. The original group of six wells were completed April 23, 1927. No further drilling operations were carried on by Magnolia until 1948, when in response to a demand for an offset well, it drilled a dry hole as an offset to a producing well it had on adjoining acreage. Thus there were twenty-one years that the lease was held without additional development. Five more years have gone by without further activity, since the drilling of the dry hole offset. Twenty-one years is a long time without additional development, when production has been brought in and, when there is added to that the five years since the drilling of the dry hole, we have a period of twenty-six years without any activity other than the required drilling of an offset well. That certainly would seem to be an unreasonable length of time. In addition we have the positive declaration of Magnolia that it does not intend to undertake additional development. In weighing Magnolia's refusal to undertake additional development, we think it is of some significance that Magnolia owns leases offsetting the lease in question on the Northeast, East, South, and on the West of the South Half.

The six wells on the lease are producing from the Deese sands. The wells

**320**

range in depth from 1,365 feet to 1,623 feet. There are deeper sands in this area known as the Pre-Deese sands. Whether production might be obtained from these sands on this lease is a disputed issue of fact. No oil and gas were being produced from the deeper sands from any well in the Township in which this lease is situated, except on the West Half of Section 31. A dry hole was drilled in this formation in 1951 in the Northwest Quarter of Section 31, between the producing well and this lease. Magnolia's expert testimony was to the effect that no production might be expected from the lower formations. However, a competent geologist testified that there are lower sands in the Pre-Deese that would probably produce oil under modern methods of production. He also testified that from his knowledge of the area there are shallow sands beside the Deese that would produce oil and that he would recommend to anyone asking his advice that the area be drilled. He further expressed his opinion that he could get the area drilled, if it were released. There is evidence of a number of dry holes around this lease at various distances therefrom. It would serve no useful purpose to describe each of these dry wells in detail. The court's finding "that there is a probability of additional production, not only from what is known as the Deese sand in the area, but from the Pre-Deese sands," finds support in the record. The court further found that "I am unable to find from the evidence that [the] Magnolia at this time has a loss in the lease." We think this finding likewise is supported by the record. The court alluded to the fact that Magnolia's books did not reflect the actual cost of drilling of the wells and that the cost statement included certain intangible costs, the exact nature and amount of which were never clearly disclosed by the evidence, and there was evidence by a competent driller that the wells could be drilled for much less than the amount set up on Magnolia's books.

There remains the further fact that Magnolia has declared positively that it does not intend to undertake further developments now or in the foreseeable future. In effect, it intends to sit on the lease, do nothing until others either prove or disprove the possibility of recovering additional oil either from shallow sands or deeper sands.

It is our conclusion that the court considered the problem in the light of applicable principles of law as declared by Oklahoma and that its findings and conclusions are supported by the record.

The judgment of the trial court is, therefore, affirmed.