Jewel **BLYTHE**, Administratrix of the Estate of Tom F. Blythe, deceased, Appellant,

v.

**SOHIO PETROLEUM COMPANY**, a corporation, Appellee.

No. 6126.

United States Court of Appeals
Tenth Circuit.

Nov. 2, 1959.

George A. Carlson, Tulsa, Okl., and Haskell Paul, Pauls Valley, Okl., for appellant.

C. Harold Thweatt, Oklahoma City, Okl. (Embry, Crowe, Tolbert, Boxley & Johnson, Oklahoma City, Okl., were with him on the brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Jewel Blythe, as administratrix of the estate of Tom F. Blythe, deceased, brought this action against Sohio Petroleum Company, a corporation,[1] in the State Court of Oklahoma. It was thereafter removed to the Federal District Court for the Eastern District of Oklahoma. In her first cause of action, she sought cancellation of an oil and gas lease on the East Half of the Southeast Quarter of Section 30, Township 1 North, Range 1 East, for failure to develop the premises for oil and gas. In a second cause of action, she sought damages for failure to prudently and properly develop the premises. Appellant Blythe has appealed from a judgment for Sohio refusing to cancel the lease and failing to award damages. The decision turns upon whether the trial court correctly applied the prudent operator rule as developed by the Oklahoma courts.

In Trust Company of Chicago v. Samedan Oil Corporation, 10 Cir., 192 F.2d 282, Chief Judge Murrah reviewed and analyzed in detail the leading Oklahoma cases dealing with the prudent operator rule as applied in Oklahoma. Nothing would be gained in again going over the same ground and nothing could be added to what Judge Murrah has so ably done in that case. In the late case of Sparks v. Midstates Oil Corporation, 10 Cir., 251 F.2d 71, 72, Judge Pickett again summarized the Oklahoma rule, as follows:

"* * * 'Predominant in all these cases is a conscientious effort to arrive at a just and equitable adjustment of the conflict of the parties to the lease, having in mind the rights and duties imposed by their contract, express or implied. In the ultimate analysis, the question lies with the Chancellor, guided only by the cardinal principles that govern the mutual duty of fair play.'"

The particular facts of this case will be judged by the rule as above announced. The 80-acre tract in question was included as a part of a lease covering 920 acres. The court found these facts. On June 23, 1944, Tom F. Blythe and Thelma Blythe executed and delivered to C. L. Carlock an oil and gas lease covering 920 acres, included in which was the above described tract. Numerous assignments of parts of the leasehold were made from time to time. On February 19, 1945, an assignment was made to the Standard Oil Company of Ohio of 280 acres, which was later assigned to Sohio. This assignment included the 80-acre tract involved in this litigation. Production of oil or gas from sands lying at a depth of approximately 800 to 1,000 feet

---

1. Herein called Sohio.

below the surface of the land was found on the 920 acres covered by the Blythe lease. Fifty-one wells have been drilled on the land to exploit the shallow sands. Out of these, twenty-three produced oil, one produced gas, and the remainder were abandoned as dry holes. In 1945, Sohio drilled a well exploratory for oil and gas at a location in the Northwest Quarter of the Northwest Quarter of Section 29, to a depth of 5,200 feet. It decided the well would not produce oil or gas, and the lease was reassigned to C. L. Carlock insofar as it covered the Northwest Quarter of the Northwest Quarter of Section 29. Sohio, pursuant to farm-out agreement, executed numerous partial assignments to various persons and firms on various parts of its 320-acre leasehold estate, limiting the depth to not exceeding 1,708 feet. In each instance, it retained an interest in the acreage assigned. The assignee of Sohio drilled and completed a total of ten producing wells. Sohio has drilled only one producing well on the land to a depth of 875 feet. Sohio drilled or participated in the drilling of nine wells on the 320-acre leasehold tract. No wells to explore the shallow sands have been drilled on the 80-acre tract involved in this lawsuit. The court found that testimony of both plaintiff's and defendant's witnesses discloses that the shallow sands could not reasonably be expected to produce from below this 80 acres; that the testimony of expert witnesses for both plaintiff and defendant established the fact that the shallow sands have been fully explored and there is no contention that additional shallow wells should be drilled. In 1949, Tom F. Blythe, now deceased, wrote a demand letter to Sohio demanding a well on the 80-acre tract, as well as on a 40-acre adjoining tract. In 1949, Sohio drilled on the 40-acre tract. The result was a dry hole. On July 23, 1957, appellant, Jewel Blythe, directed a written demand to Sohio to drill within 60 days or release the 80-acre tract here involved. The demand requested that the well be drilled to a depth to properly test said tract. The court found that the evidence disclosed that this demand pertained to the deeper formations. The court found that the area covered by the Blythe lease is a very complex area from a geological standpoint, in both the shallow formations and the deeper formations, characterized by numerous faults and cross faults; that there are major changes of the formations in relative short distances; that outside the actual drilling, the most useful and accurate method of locating possible oil traps, which might indicate the presence of such oil traps, is the seismic method; that although it had been known for years that the area is underlain with formations which are favorable for the forming of traps in which oil or gas might be expected to accumulate, it was not until the last three years that interest in the possibilities of production of oil and gas being found from the deeper formations intensified; that in the last three years many new oil and gas leases have been acquired by parties interested in the productive possibilities of the area, and intensive seismographing has taken place in the general area in that period of time. The court found that interest in the possibility of the deeper production centers mainly in the Simpson Formation, which might be expected to be encountered beneath the 80 acres involved in this lawsuit, at a depth anywhere from 5,000 to 12,000 feet below the surface of the land, and that a well drilled on this 80 acres exploratory for production from the deeper formations would be a wildcat well and would cost approximately $238,000. The court further found that five wells have been drilled in a radius of five miles of the Blythe 80 acres to a depth sufficient to penetrate the Simpson Formation in the Mill Creek Syncline, and that none of these wells has found production of oil or gas in the Simpson Formation or in other deeper sands below 7,000 feet. The court also found that since the discovery of the Eola Field in 1947, Sohio has been actively interested in that portion of the Mill Creek Syncline, which includes the Eola Field and the area in which the

Blythe acreage lies; that Sohio has maintained a staff of experts which have devoted a considerable portion of their time to the study of the area; and that Sohio has done extensive seismographing and has maintained an active interest in the area.

While eight assignments of error are urged for reversal, they all add up to the one contention that the trial court's findings of fact on which it based its conclusion of law that equity does not require a cancellation of the lease with respect to the 80 acres in question, find no support in the record, or are against the clear weight of the evidence.

It is urged by appellee that appellant has not brought up all the record upon which the trial court might have based its findings, and that, therefore, the findings must be approved. Cases to support this contention are cited in appellee's brief, but because we feel that the record before us is sufficient to sustain the court's findings and conclusions of law, we do not pass upon this contention. Neither do we find it necessary to discuss the many cases cited by both parties to sustain their respective positions. As is recognized in all the cases, each case must stand on its own bottom. The equitable principles guiding us are clear and well recognized. It is from their application to the peculiar facts of each case that we undertake to find the correct and just result.

We are not concerned here with the production from the shallow horizons nor with development operations in these sands. It is without substantial dispute, as found by the court, that shallow production on the acreage covered by the original lease has been fully developed. The court found that while no shallow sand wells have been drilled on the 80 acres in question, the shallow sands under the 80 acres could not reasonably be expected to produce from this sand, and that the shallow sands have been fully explored and that there is no contention that additional shallow wells should be drilled. This finding is not seriously questioned.

■ What we are dealing with here is the deeper sand. The sand from 5,000 feet down. It is appellant's contention that appellee has breached its obligation to fully develop the leased premises by unreasonable delays in exploring these deep sands. It points to the fact that thirteen years have gone by since the original lease was given. While time alone is not decisive, it is a fact to be considered in determining whether there has been good faith dealing with respect to the leased premises, and long delay may in and of itself be sufficient to place the burden of explanation on the lessee.

■ Thirteen years is a long time and no doubt caused the court to place the burden of justification on Sohio. The decisive question is, did it sustain the burden? But we are not concerned primarily with the thirteen years. The court found that the interest in the possibility of deeper production centered mainly in the Simpson Formation which might be expected to be encountered beneath this 80 acres anywhere from 5,000 to 12,000 feet below the surface of the land, and that the cost of such a well was estimated at $238,000. It further found that while it had been known for years that this area is underlain with formations which were favorable for the formation of traps in which oil and gas might be expected to accumulate, it was not until the last three years that interest in the possibilities of oil and gas being found in the deeper formations intensified; that during the last three years, many new oil and gas leases have been acquired by parties interested in the productive possibilities of the area; and that intensive seismographing has taken place in the general area.

Equity would not require Sohio to expend $238,000 to explore these great depths during a period of time when there was no general interest therein or belief that production of oil or gas might be found therein. The question then is, did Sohio act in bad faith or in disregard of lessor's rights by not undertaking this expensive drilling operation during the three or four years that opinion

and knowledge concerning these deep formations were crystallizing? We think not.

Sohio was not indifferent to the possibility of development from these lower areas. In January, 1958, it asked permission to do seismic work on the Blythe lease. Permission for this was refused by appellant. Funds for the performance of this work had been appropriated or budgeted by Sohio prior to the institution of this action. Arrangements have been made by Sohio and other operators for the drilling, in the near future, of a well to a projected depth of 12,500 feet on a unitized tract in Section 28, Township 1 North, Range 1 East. The drilling of such a well will shed light on the productive possibilities under the 80 acres in question. There is other evidence showing that Sohio was alert to the possibilities of future production from this strata.

No attempt has been made to set out all the evidence which causes us to believe that the trial court reached the correct result. We think this conclusion finds adequate support in what has been set out above.

Affirmed.