Margaret **CHENOWETH** et al.,
Appellants,

v.

**PAN AMERICAN PETROLEUM CORPORATION**, formerly Stanolind Oil and Gas Company, a corporation, Appellee.
No. 7058.

United States Court of Appeals
Tenth Circuit.

Feb. 4, 1963.

Rehearing Denied March 7, 1963.

Barth Walker, Oklahoma City, Okl. (Akolt, Turnquist, Shepherd & Dick, Denver, Colo., Walker & George, Oklahoma City, Okl., and Herbert A. Hoffman, Chicago, Ill., with him on the brief), for appellants.

Coleman Hayes, Oklahoma City, Okl. (Norton Standeven, Oklahoma City, Okl., with him on the brief), for appellee.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

The plaintiffs-appellants in this action seek to cancel the oil and gas leases covering a 40-acre tract in Garvin County, Oklahoma, as to several zones or formations that are not presently being produced by the lessee. There are two oil and gas leases in effect covering appellants' interest in the minerals and under which the defendant-appellee is the lessee. The 40-acre tract covered is known as the Willens B Tract, and the appellee is the operator of the leased premises by agreement with the lessee holding under other mineral owners. The appellants also seek money damages.

The appellee in 1955 drilled a commercial well on the tract to a total depth of 10,500 feet. The well was dually completed to produce from the McLish formation and from the Bromide formation. There was offsetting production from these two formations at the time the well was so completed. The well was drilled to the total depth above indicated and casing was set to the bottom of the hole which was in the Oil Creek sands. Electrical and micrologs were made of the entire hole and drillstem tests were made in the shallower formations but not in the Oil Creek sand. At the time this well was completed, dual completions were in use in the area, but triple completions were not. The area is extensively faulted, and drilling and completion of wells to this depth are difficult and expensive.

The initial well above described, known as the Willens B No. 1, produced for a period of time but then its production began to decline. Reworking operations were commenced but were not successful, it being found that the casing had collapsed. Appellee then drilled a second well, the Willens B No. 2, on the same tract at a cost of $343,907.00. This second well was dually completed in the same formations as the first, and is a commercial well. On completion of the second well, the Willens B No. 1 well was temporarily abandoned.

The formations which were encountered in the wells on the tract in question and which are sometimes productive in this general area are from top to bottom, the Eola Conglomerate, the Hunton Lime, Bromide sand, McLish sand, and Oil Creek sand. The evidence of appellee shows that the testing conducted during the drilling of the first well showed that the Conglomerate contained a small amount of gas and oil, that it was a tight formation, and had a low bottom hole pressure. The evidence also shows that upon a study of the data from other wells in the area and of the testing and logging conducted in this well, the operator concluded that the Conglomerate was not commercial. The same result was reached as to the Hunton Lime formation. As the case was presented, the appellants contended that the appellee failed in its duties in not completing a well or wells in the Conglomerate, the Hunton Lime, and in the Oil Creek formations.

The evidence shows that since triple completions were not utilized in this area at the time in question, thus to produce the Bromide, McLish, and any one or two additional formations, it would have been necessary to drill and to operate two separate wells on this tract. Forty-acre spacing is in effect under state regulations.

The complaint as it was originally filed presented a case as to whether or not the appellee had developed the tract as would a prudent operator. The testimony and evidence offered by the appellants during the course of the case presented some additional contentions which will be hereafter discussed.

To consider first the Oil Creek formation: The record shows that at the time the Willens No. 1 well was completed, there were no offsetting Oil Creek wells; the only offsets were in the McLish and the Bromide. It was known that there was a large fault crossing the tract in question having a large displacement, and that the oil-water contact was not far from the fault. The only productive area in this formation was between the fault and the water-oil contact. Using volumetric calculations the oil recoverable by primary methods in this area was computed by the appellee's witnesses. They also estimated the cost of a well to this depth. The witness for appellants did not make an estimate or computation of the reserves other than by averaging the estimated reserves for other wells in the area. The trial court made a finding that the recoverable reserves in the Oil Creek were about 25,854 barrels, that the cost of a well to this depth would be about $350,000.00, and consequently such a well would not be drilled by a prudent operator. This finding is well supported by the evidence. Since dual completions or single completions only were used as above mentioned, it is apparent that to produce the Oil Creek with the McLish and the Bromide would have taken two wells, all of considerable depth. The Oil Creek development in the area has resulted in a producing well on the direct east offset, a tract having the identical ownership as the tract in question. The Oil Creek was dry in the north and south direct offsets and in the southeast diagonal offset, and no well has been drilled as a direct west offset nor as a diagonal northeast offset. Thus if there could be any drainage in the Oil Creek, it would be to the tract owned in the same manner as the Willens B tract. The Oklahoma

Corporation Commission has unitized the Oil Creek in this area and the owners of the Willens B tract participate in this production under the established formula. Appellant Hoffman objects to this unitization order and has an appeal pending on this matter in the Supreme Court of Oklahoma. He attempts to litigate the validity of this order on this appeal, but this cannot be done under these circumstances. To do so would clearly be a collateral attack on the order of the Commission.

As to the Eola Conglomerate and the Hunton Lime, the evidence consists of tests made in drilling the Willens B No. 1 and No. 2 wells and development later on adjoining tracts. This evidence supports the trial court's finding that these formations would not be productive of oil or gas in paying quantities whether completed separately or the two together as a dual completion. The witness for appellant testified that although he thought it might be productive, he did not feel it necessarily should have been drilled before October 1959. Since this suit was filed on November 5, 1959, the question as to delay is not present.

Appellant Hoffman also objects to the original order of the Oklahoma Corporation Commission entered in 1954 which found the McLish formation to be a common source of supply. He was not a party to the proceeding and contends that this order was wrong since there are two productive zones in the formation which are separate sources of supply. Appellants have not sought to have this order amended by the Commission as they are permitted to do under Oklahoma law. Thus such an administrative remedy is still available. Interstate Nat. Gas Co. v. Southern California Gas Co., 209 F.2d 380 (9th Cir.); Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576.

In cases questioning the development done by an operator under the prudent operator rule, the actions of the operator are examined item by item. This is essentially a comparison of his acts with standards or practices then

**66**

prevailing in the area all in the context of economics. These items constitute fact questions and on appeal the findings made in such a suit must be treated accordingly. The appellee in our opinion has met the obligations of a lessee-operator under the Oklahoma prudent operator rule.

The prudent operator rule as applied in Oklahoma has been considered by this court in a number of cases including Magnolia Petroleum Co. v. Wilson, 215 F.2d 317 (10th Cir.); Gregg v. Harper-Turner Oil Co., 199 F.2d 1 (10th Cir.); Trust Co. of Chicago v. Samedan Oil Corp., 192 F.2d 282 (10th Cir.); Sparks v. Midstates Oil Corporation, 251 F.2d 71 (10th Cir.); Blythe v. Sohio Petroleum Company, 271 F.2d 861 (10th Cir.), and Sun Oil Company v. Frantz, 291 F.2d 52 (10th Cir.). Under these authorities the rule does not require an oil and gas lessee to further develop the lease in a proven field unless there is a reasonable expectation that there will be returned from production the cost of the development plus a reasonable profit. Sparks v. Midstates Oil Corporation, supra. The standards to be applied were well described in Trust Co. of Chicago v. Samedan Oil Corp., supra, as follows:

> "As the term suggests, it imposes upon the lessee the implied duty to do whatever in the circumstances would be reasonably expected of a prudent operator of a particular lease, having a rightful regard for the interest of both the lessor and lessee."

Further the court said:

> "The enforcement of the implied covenants of an oil and gas lease to diligently explore, develop, produce, and protect from offset drainage has been rightfully committed to the discretion of the Chancellor or the trier of the facts, with full power to adjust the equities of the parties to the particular facts and circumstances in each case."

See also Sun Oil Company v. Frantz, supra.

The Oklahoma Court in Shell Oil Co. v. Howell, 258 P.2d 661, considered the application of the rule as it prevails in Oklahoma following Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934, and the trial court's action in the case at bar is consistent therewith. It found no reason to cancel the leases and its findings are well supported by the evidence.

Affirmed.