FERGUSON et al. v. GULF OIL CORPORATION et al.

No. 29788. April 27, 1943.

Rehearing Denied June 8, 1943.

*137 P. 2d 940.*

J. B. Moore, of Ardmore, for plaintiffs in error.

James B. Diggs, William C. Liedtke, Russell G. Lowe, Redmond S. Cole, C. L. Billings, and James B. Diggs, Jr., all of Tulsa, and Earl Q. Gray, of Ardmore, for defendant in error Gulf Oil Corporation.

HURST, J. This is an action to cancel an oil and gas lease and for damages. Plaintiffs, owners of one-fourth of the royalty interest, in three causes of action, alleged: (1) That the lease had been abandoned, (2) that defendants had breached the implied covenants of the lease, and (3) that plaintiffs had been damaged by defendant's refusal to surrender the lease upon demand. Prayer was for cancellation of the entire lease and for damages.

Defendant Gulf Oil Corporation, owner and operator of the lease, by answer alleged: (1) That plaintiffs together owned only one-fourth of the royalty interest, and that because thereof there existed a defect of parties plaintiff, and that notice prior to institution of suit by owners of less than the entire royalty interest was insufficient, (2) that it had not abandoned the lease, but intended to drill further

wells thereon when conditions justified, (3) that in failing to drill further wells it had acted as a prudent operator, and (4) that prior to any demand for release by the plaintiffs, the defendant had expended large sums of money in testing the deep sands in the vicinity of said land in reliance on its ownership of this and other leases and in reliance on the acquiescence of plaintiffs in the delay in development, and that plaintiffs were by these facts estopped to demand cancellation of the lease. The owners of the other three-fourths of the royalty interest, who were made parties defendant, by answer neither denied nor affirmed the allegations of the petition, and at the trial announced themselves to be neutral. Since such other defendants have no part in this appeal, the defendant Gulf Oil Corporation will be hereinafter referred to as defendant.

The lease in question was executed in May, 1914, covered a tract of 160 acres, and was for a term of five years and as long thereafter as oil and gas are produced. It was upon a standard printed form, except that a typewritten clause provided that lessee should, if oil or gas was found in paying quantities, "continue to develop the property with due diligence." During the primary term and the period prior to 1924, five wells were drilled thereon, four of which are still producing in paying quantities. These wells were on the north and east side of the tract, produced from the shallow sand found at about 2,400 feet, and the largest had an initial daily production of around 60 barrels. No well has been drilled on the lease since 1923. In January, 1935, the defendant, in conjunction with other lease owners in the pool, started the Williams well, a deep test, less than a half mile northeast of plaintiff's tract. While the pleading alleges the first notice to have been given on March 15, 1934, we think the proof at the trial showed that it was not until March 15, 1935, and while the Williams well was drilling, that plaintiffs made their first written request of the defendant to re-lease the undeveloped portion of the lease. They were advised by a letter of March 22, 1935, of the deep test then in progress which would be "an adequate test of the deeper possibilities underlying your farm," and thereafter, on April 6, 1936, the Williams well was completed at a depth of 8,105 feet and with an initial daily production of 3,309 barrels. On April 10, 1936, another deep well, known as the Johnson well, was started about a half mile northwest of plaintiff's land. On April 29, 1936, while the Johnson well was drilling, plaintiffs demanded release of the lease on their tract. The Johnson well was completed as a dry hole on January 7, 1937, at a depth of 7,497. The formations encountered indicated an exceedingly steep decline of the deep sands to the west from the first well, and tended to condemn the lands to the west of the Williams well for deep production. During 1937 and 1938 several other deep producing wells were drilled by the defendant and its associates, in an area that lay about a mile northeast of plaintiffs' land. A map showing the location of these wells, the lease owners, date of commencement and completion, and initial production thereof, was introduced in evidence. The drilling of one of these deep wells consumed from six months to a year, and cost from $150,000 to $200,000.

On January 27, 1938, Mr. O. M. Ferguson, husband of plaintiff Ada D. Ferguson, and a Mr. Gant talked with Mr. Rush Greenslade, vice president of the defendant corporation. The record reveals some discrepancy in reporting this conversation by plaintiffs' witnesses. Mr. Ferguson testified that Mr. Greenslade said that no further wells would be drilled, but Mr. Gant testified that Mr. Greenslade told of the Garrett well about to be drilled and indicated that further development of plaintiffs' land would depend on the result of the Garrett well and other developments in the field. The Garrett well was started February 16, 1938, about one-fourth mile west of the Williams well, and

though the producing horizon was encountered February 2, 1939, production was not obtained because of the nonporosity of the sand. On May 3, 1938, plaintiffs made written demand that the defendant either commence a well on their land within 20 days or release its lease thereon, and when it failed to do either, instituted this action on July 5, 1938. This was the only notice given in which plaintiffs demanded that additional wells be drilled. The case was tried October 6, 1939. It will be noted that at the time of plaintiffs' last demand and at the time of filing suit, the Garrett well was still being drilled, but at the time of trial it had been completed as a nonproducer. The location, depth, and production of the various wells as disclosed by the evidence indicate that there is a possibility that plaintiffs' land lies on the western edge of the producing area, though it has been somewhat condemned by the Johnson and Garrett wells. It was admitted that plaintiffs together owned only one-fourth of the royalty interest in the land.

At the trial of the case all of the foregoing facts were disclosed by plaintiffs' evidence. Many of such facts were brought out on cross-examination. At the conclusion of plaintiffs' case defendant interposed a demurrer to the evidence, which was treated as a motion for judgment, and, after weighing the evidence, the court discharged the jury and rendered judgment for defendant. From such judgment, plaintiffs appeal.

1. Plaintiffs first contend that where an action for forfeiture and damages is tried to a jury, the rules applicable to jury trials obtain, and that upon demurrer the court is not entitled to weigh the evidence. We do not agree. The primary relief sought here was equitable, and any other relief granted would have been merely incidental thereto. The case is therefore one of purely equitable cognizance. Moschos v. Bayless, 126 Okla. 25, 258 P. 263. The verdict of the jury would have been at most only advisory, and the court would not have been justified in following it, if contrary to its own views. Maynard v. Hustead, 185 Okla. 20, 90 P. 2d 30; Gamel v. Hynds, 69 Okla. 204, 171 P. 920; Crump v. Lanham, 67 Okla. 33, 168 P. 43. In cases of equitable cognizance the court should treat a demurrer to the evidence as a motion for judgment and weigh the evidence. Katschor et al. v. Eason Oil Co., 178 Okla. 634, 63 P. 2d 977; Connolly v. Gaffany, 159 Okla. 60, 14 P. 2d 391. The mere presence of a jury in such a case will not prevent the application of rules that govern actions of equitable cognizance tried to the court.

2. The principal question for decision is whether, under the rule laid down in Doss Oil Royalty Co. v. The Texas Co., 192 Okla. 359, 137 P. 2d 934, plaintiffs, though having failed to offer proof that further development would probably result in paying production so as to comply with the prudent operator rule, were nevertheless entitled to an alternative decree of forfeiture of the undeveloped portion of the lease because of defendant's failure to drill additional wells thereon for an unreasonable length of time. In this case, as in the Doss Case, substantial portions of the lease remain undeveloped after many years. In that case we held that such failure to drill does not constitute an abandonment of the undeveloped portions of the lease, but may constitute a breach of the implied covenant to further develop. Since the lease may not be said to have been abandoned, we proceed to determine whether relief should be granted for breach of such covenant. In the Doss Case we laid down the rule that in such cases the courts may require operators to drill or suffer forfeiture of such undeveloped portions, unless the circumstances of the particular case make it inequitable to do so. In this case we think the circumstances are such that it would be inequitable to apply the rule. It should be remembered that from 1923 until 1935 plaintiffs made no demand of defendant for either release of the undeveloped portion of the lease or the

drilling of additional wells thereon. It was not until after defendant had expended a considerable sum of money in drilling a well to test the deep sands in the vicinity of the lease, and the value of a lease on plaintiff's land had increased thereby, that plaintiffs made their first written request of defendant to surrender the undeveloped portion of the lease. The well then had reached a depth of some 4,000 feet. If defendant had then surrendered such undeveloped portion, plaintiffs could have sold a new lease thereon at a high price because of the proximity of the deep test then being made by defendant. Four days after completion of the Williams well, the Johnson well was started to test the deep sands to the northwest of plaintiffs' land. While this well was drilling the value of a lease on plaintiffs' land was, of course, further increased, and they again demanded release of the lease thereon. After this well proved dry it is significant that no further demand for surrender was made until the Garrett well was commenced in 1938. We think it evident that plaintiffs desired to capitalize on the large expenditures being made by defendant in drilling these test wells.

The fact that defendant owned the lease on plaintiffs' land was no doubt part of its reason for making these expensive tests. Although the Johnson and Garrett wells have tended to condemn plaintiffs' land, there is a possibility that it may be on the outer edge of the producing area of the deep sand. At the time of trial the Garrett well had been completed only a few months. Defendant is entitled to use caution in approaching the edge of the producing area so as to avoid the dip disclosed by the Johnson well.

The rule laid down in the Doss Case is to protect the lessor from the inequality of position that exists between the lessor and the lessee, and to correct the inequity arising from the failure of a lessee to carry out the purposes for which the lease was given, yet it is a rule of equity and should be applied only where it will effectuate justice. It should not be used to permit a lessor to secure cancellation so that he may sell a new lease on the land at a speculative price made possible by large expenditures of a lessee in drilling near-by tests. Neither should it be used to penalize a lessee for the exercise of caution in the conduct of an expensive and hazardous enterprise, which if successful will aid both lessor and lessee. These facts distinguish this case from the Doss Case.

Plaintiffs intimate that we have the power to decree forfeiture as to certain sands underlying a lease and to leave the lease in effect as to other sands. We think the question is not involved in this case because no such relief was sought, and because plaintiffs' witness, Roy Johnson, testified that the lease was "drilled up as to the shallow rights." However, we note that we intimated that such relief might be granted in Fox Petroleum Co. v. Booker, 123 Okla. 276, 253 P. 33, and that the Circuit Court of Appeals for the Tenth Circuit on the basis of the Fox Case has concluded that such is the law in Oklahoma. Carter Oil Co. v. Mitchell, 100 Fed. 2d 945. The courts of California have also granted such relief. Jones v. Interstate Oil Corp., 115 Cal. A. 302, 1 P. 2d 1051. Whether we might grant such relief in a proper case, we do not decide.

Because of the result reached we need not now decide defendant's contentions that failure of all the royalty owners to join in the demand for further drilling or surrender was fatal to plaintiffs' claim, and that there was a defect of parties plaintiff, and we express no opinion thereon.

Affirmed.

CORN, C. J., and OSBORN, DAVISON, and ARNOLD, JJ., concur. GIBSON, V. C. J., and BAYLESS and WELCH, JJ., concur in result. RILEY, J., dissents.