SKELLY OIL CO. et al. v. BOLES et al.

No. 30145. Oct. 5, 1943.

Rehearing Denied Nov. 23, 1943.

*142 P. 2d 969.*

Brown & Cund, of Duncan, and E. R. Hastings and Hawley C. Kerr, both of

Tulsa (W. P. Z. German, Alvin F. Molony, James Marberry, Ernest V. Potter, and Carl C. Lovell, all of Tulsa, of counsel), for plaintiffs in error.

Ledbetter & Ledbetter, of Ardmore, for defendants in error.

DAVISON, J. This cause is presented for review on appeal from the district court of Stephens county. It is an action of equitable cognizance to cancel in part an oil and gas lease executed in 1915 contemplating a primary term or exploratory period of five years and containing a thereafter clause calculated to preserve the lease during the production of oil and gas from the same.

The lease covered 230 acres of land situated in sections 34 and 35 of township 1 south, range 5 west, in Stephens county.

In 1917 C. L. Boles purchased a 10-acre tract of the land covered by the lease. He died in 1929 and the 10-acre tract is now owned by his heirs. The Skelly Oil Company and Selby Oil & Gas Company are the present owners of the lease on the tract. No legal questions arise in connection with the succession in ownership of either the lessors' or lessees' interest. Therefore, the details thereof will not be discussed herein.

During the exploratory period of the lease, oil was discovered on the leased premises in paying quantities. Twenty-six wells have been drilled on the leased premises of which 16 are still producing oil. During the years 1921-1922 three wells were completed on the 10-acre tract, which we shall hereafter refer to as the Boles tract. Oil was produced from these three wells until 1931. In October of that year they were plugged. Since that date no production has been accomplished on the Boles tract and no more drilling has occurred there. However, as before indicated, there has been continuous production from other portions of the leased premises.

The production in the area is from shallow sands and the wells have not been heavy producers. To illustrate, the initial production of the three wells on the Boles tract was, respectively, 25 barrels, 6 barrels, and 12 barrels.

In June of 1938, almost seven years after production ceased on the Boles tract, Billee Zack Boles and the other heirs of C. L. Boles, as plaintiffs, instituted this action to cancel the lease as to the Boles tract. Plaintiffs asserted that the defendants had abandoned the purposes of the lease as to the 10-acre tract, and also that the implied covenants of the lease had been broken as to that portion of the leased premises.

Subsequently, in the trial of the cause plaintiffs pressed their asserted right to relief on the theory of abandonment. On this theory the plaintiffs prevailed in the court below and the lease was canceled.

In our recent decision in Doss Oil Royalty Co. v. Texas Co., 192 Okla. 359, 137 P. 2d 934, we recognized that some uncertainty existed in our decisions as to when and under what circumstances the theories of abandonment and cancellation for breach of implied covenants applied to given situations. Because of that uncertainty and in view of the equitable nature of such cases, we decided to and did relax the rule of practice which indicates consistency of theory throughout the proceeding in a case. Plaintiffs herein are entitled to the same liberal consideration as was given in that case.

In the Doss Case we broadened the scope of relief which may be granted on the theory of breach of implied covenants and relegated abandonment cases to instances in which physical relinquishment and intent to relinquish and not thereafter drill, coincide. We therein said:

". . . We leave the doctrine of abandonment to be applied in cases where intention to abandon is accompanied by physical relinquishment."

Without expressing an opinion on whether the act of plugging wells on a portion of the leased premises was suffi-

cient to constitute a physical relinquishment of a portion of those premises, we are of the opinion that the judgment of the trial court cannot be sustained for want of sufficient direct or circumstantial proof of the existence of an accompanying intent to abandon the purposes of the lease.

On the contrary, witnesses who acted in a representative capacity for the company denied the existence of such an intent and the denial finds support in the circumstances which surround and succeed the occurrence.

As above stated, production in the area was from shallow horizons. Whether production can be accomplished from lower horizons is not known, but there is some belief that such production can be accomplished from sands lying approximately 8,000-9,000 feet below the earth's surface. However, drilling tests of these sands for definite determination of their oil producing qualities are quite expensive, and preliminary investigations by other means and negotiations with other operators for the purpose of dividing expenses of drilling tests are justified. Such preliminary investigation and negotiating were under way during the time which succeeded the shutting down of the three wells on the Boles tract and the instituting of this action.

They had not, however, reached a stage where a location had been selected. The Boles tract had thus not been selected as a site for such a test nor had it been eliminated from that prospect or from prospective further development if such another test should prove successful.

These facts, together with the fact that 16 wells were still producing on the leased premises, are indicative of an intent not to abandon. In holding otherwise, the trial court's decision was clearly against the weight of the evidence, and we so hold.

Neither can the decision of the trial court be sustained on the theory of cancellation for breach of implied covenants. The considerations which we have just reviewed have a direct bearing on the case when considered on this theory.

It may be mentioned at this point that under our holding in the Doss Case, supra, the possibility, or even probability, that drilling may prove unprofitable no longer constitutes an absolute bar to cancellation for breach of the implied covenant to properly develop, when the delay in development is of unconscionable duration.

Just how long such delay can be excused as conscionable depends in each case upon the circumstances rather than upon the precise time which has expired. In view of the disposition of the lessee to investigate the possibility of other deeper producing sands in the area, the fact that such disposition was accompanied by actual investigations involving the expenditure of money and by negotiations with other operators for the purpose of sharing expenses of deep drilling tests, and in view of the fact that the lessee was still producing a number of wells on the leased premises, we are impelled to hold that the delay in this case was not unconscionable, which must appear in view of the absence of proof that the drilling would probably be profitable.

In many respects the situation here presented is comparable to that treated in Ferguson et al. v. Gulf Oil Corporation, 192 Okla. 355, 137 P. 2d 940, wherein we held the lease should not be canceled in whole or in part. We repeat as appropriate here our observation in the Ferguson Case:

"The rule laid down in the Doss Case is to protect the lessor from the inequality of position that exists between the lessor and the lessee and to correct the inequity arising from the failure of a lessee to carry out the purposes for which the lease was given, yet it is a rule of equity and should be applied only where it will effectuate justice. It should not be used to permit a lessor to secure cancellation so that he may sell

a new lease on the land at a speculative price made possible by large expenditures of a lessee in drilling nearby tests. Neither should it be used to penalize a lessee for the exercise of caution in the conduct of an expensive and hazardous enterprise, which if successful will aid both lessor and lessee. . . ."

Of course, our refusal to cancel the lease at this time does not mean that the delay which has already occurred may not continue until it becomes unconscionable and becomes the basis for future cancellation.

We hold the lease to be in force under the thereafter clause (Pierce Oil Corporation v. Schacht, 75 Okla. 101, 181 P. 731; Gypsy Oil Co. v. Cover, 78 Okla. 158, 189 P. 540) by reason of the continued production, and return the cause to the trial court, with directions to enter judgment for the defendants.

CORN, C. J., and OSBORN, HURST, and ARNOLD, JJ., concur. GIBSON, V.C.J., and BAYLESS and WELCH JJ., concur in result. RILEY, J., dissents.