**TRUST CO. OF CHICAGO et al. v. SAMEDAN OIL CORP.**

No. 4285.

United States Court of Appeals Tenth ·Circuit.

Nov. 5, 1951.

---

2. Gorgia Code, § 108–111.

John B. Ogden, Oklahoma City, Okl., for appellants.

George N. Otey, Ardmore, Okl., for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

Appellants, trustees, for the heirs of the lessor under a producing oil and gas lease, brought this action against the lessee, Samedan Oil Corporation, a Delaware corporation, for partial cancellation of the lease, alleging a breach of the implied covenant for further development. Diversity of citizenship and the requisite amount in controversy being present, jurisdiction was properly invoked under 28 U.S.C.A. § 1332.

The lease in question, covering forty acres in Carter County, Oklahoma, was executed September 1, 1933, for a term of three years and as long thereafter as oil or gas or either of them "is or can be produced". In August 1936, the lessee drilled a well on the northwest ten acres of the forty acre tract, and obtained production in paying quantities. A second producing well was completed June 1, 1945, on the southeast ten acres. No other wells have been drilled since 1945.

In November 1949, the lessors notified the lessee that unless "adequate development" was commenced within 60 days, suit

would be filed to cancel the undeveloped portions of the lease for failure to diligently develop the same. When no wells were commenced within the 60 day period, this suit was brought to cancel the lease on the two undrilled ten acre tracts.

The trial court held that "an ordinary prudent operator, having in mind the best interest of the lessor and the lessee, would not have drilled other wells on the premises, other than those drilled by the Samedan Oil Corporation." Cancellation was denied and the lessors have appealed.

The enforcement of the implied covenants of an oil and gas lease to diligently explore, develop, produce, and protect from offset drainage has been rightfully committed to the discretion of the Chancellor or the trier of the facts, with full power to adjust the equities of the parties to the particular facts and circumstances in each case. As a criterion or standard for determining whether the lessee has complied with the implied covenants of the lease, the courts, including Oklahoma, have generally adopted what has come to be commonly known as the "prudent operator" test. As the term suggests, it imposes upon the lessee the implied duty to do whatever in the circumstances would be reasonably expected of a prudent operator of a particular lease, having a rightful regard for the interest of both the lessor and lessee. And, the courts have gone further to enumerate various considerations or factors which may enter into and affect, but not necessarily control, the judgment of a prudent operator. Merrill, Covenants Implied in Oil and Gas Leases, Second Edition, Section 122; Summers Oil and Gas, Permanent Edition, Section 414. A first consideration is the precept that a prudent operator may not act only for his self interest. He must not forget that the primary consideration to the lessor for the lease is royalty from the production of the lease free of cost of development and operation.

We have said, following Oklahoma law, that the implied covenants of the lease impose no obligation upon the lessee to develop the lease beyond the point where it would be profitable to him, even if some benefit to the lessor would result therefrom. And, that the one seeking cancellation has the burden of proving that the drilling of additional wells would probably result in profitable production. Stanolind Oil & Gas v. Sellers, 10 Cir., 174 F.2d 948; Gerson v. Anderson-Prichard Oil Corp., 10 Cir., 149 F.2d 444.

But, subsequent Oklahoma cases leave no doubt that a prudent operator without any obligation to further develop, in the absence of a showing of probable profitable production, is no longer the true criterion for due diligence under the implied covenants of the lease.

With Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934, 935, 938, the Oklahoma court discarded abandonment for mere lapse of time as a distinct ground for cancellation of a lease, and very properly, we think, incorporated lapse of time as a part of the concept of the implied covenant to exercise due diligence. This innovation necessitated a reexamination and reappraisement of the prudent operator rule, for as Mr. Justice Hurst aptly observed in the Doss Oil Royalty case, "To permit the lessee to hold the lease for an unreasonable length of time for merely speculative purposes, is to allow him to protect his own interest and to disregard the interest of the lessor. If conditions do not indicate to him that further development will be profitable, it is but fair that, after a reasonable time has expired, he surrender the undeveloped portions of the lease and allow the lessor to procure development by others or assume the burden of showing why in equity and good conscience the undeveloped portion should not be cancelled so that the owner may, if possible, get it developed by others."

In resolving the question of the breach of the implied covenants in McKenna v. Nichlos, 193 Okl. 526, 145 P.2d 957, 960, Mr. Justice Hurst, construing and applying his own language in the Doss case, stated "that while, in determining such matter, we would consider the question of the likelihood of profit from further drilling, we would also give weight to other considerations, particularly the length of time which the lessee had held the lease without further development. In other words, after

the passage of a reasonable length of time, the duty to drill additional wells becomes progressively greater, and the standard of the prudent operator becomes progressively of less importance in determining whether such duty exists." See also Morrison v. Johnson, 199 Okl. 264, 185 P.2d 208; Colpitt v. Tull, Okl., 228 P.2d 1000.

Again, speaking for the Oklahoma court in Ferguson v. Gulf Oil Corp., 192 Okl. 355, 137 P.2d 940, 943, (decided contemporaneously with the Doss case), Mr. Justice Hurst characterized the rule in the Doss case as requiring operators to drill additional wells within a reasonable time or suffer a forfeiture of the undeveloped portions of the lease, unless the circumstances of the particular case make it inequitable to do so. See Merrill, Implied Covenants in Oil and Gas Leases, 1950 Pocket Supplement, Section 140. Applying this rule, however, to the particular facts of his case, he went on to hold that a delay of twelve years was not unreasonable where no demand had been made for further development until after the lessee had expended considerable sums of money in drilling a deep test well in the vicinity of the lease, thereby greatly enhancing its value. He again emphasized the rule of the Doss case as one of essentially equitable cognizance to effectuate justice, and that "It should not be used to permit a lessor to secure cancellation so that he may sell a new lease on the land at a speculative price made possible by large expenditures of a lessee in drilling nearby tests. Neither should it be used to penalize a lessee for the exercise of caution in the conduct of an expensive and hazardous enterprise, which if successful will aid both lessor and lessee." These facts, said the court "distinguish this case from the Doss case."

Insufficient development was held to make out a prima facie case in an action to cancel the undeveloped portion of the lease in Magnolia Petroleum Co. v. Rockhold, 192 Okl. 628, 138 P.2d 809. And, the case was remanded to the trial court to afford the lessee an opportunity to show that the delay was not inequitable. A delay of more than seven years was justified in Skelly Oil Co. v. Boles, 193 Okl. 308, 142 P.2d 969, 971, up-

on a showing that at the time of the demand for cancellation, the lessee was conducting investigations involving the expenditure of money, and actually negotiating with other operators for the purpose of bearing the expenses of drilling a well in the vicinity of the lease to test the productivity of deeper horizons. A delay of twenty years in Colpitt, v. Tull, Okl., 228 P.2d 1000, relieved the lessor from the burden of showing that additional wells would have been profitable, and required the lessee to come forward with special circumstances justifying such delay.

From these cases we take it that while the prudent operator theory is yet distinctly relevant to the question of due diligence, it is not the exclusive test; that although likelihood of profitable production may be a factor in determining what a prudent operator would do in the particular circumstances, it is not conclusive of the prudence of his conduct. Even a prudent operator must excuse his unreasonable delay. What constitutes an unreasonable delay "depends in each case upon the circumstances rather than upon the precise time which has expired." Skelly Oil Co. v. Boles, supra; Doss Oil Royalty Co. v. Texas Co., supra. Thus, one year may be unreasonable in some circumstances, and ten years reasonable in others. Predominate in all these cases is a conscientious effort to arrive at a just and equitable adjustment of the conflict of the parties to the lease, having in mind the rights and duties imposed by their contract, express or implied. In the ultimate analysis, the question lies with the Chancellor, guided only by the cardinal principles that govern the mutual duty of fair play.

Coming now to the application of these principles to the particular facts in our case, the evidence shows that the lease is located in the Wildcat Jim Field in Southern Oklahoma, discovered in 1914. Most of the wells in this Field have been drilled on a ten acre spacing pattern and are producing on a non-allocated basis. The first well drilled on this lease in 1936 initially produced approximately 100 barrels of oil per day, but soon settled to about 30 barrels per day. The second well, drilled in 1945,

initially produced 25 barrels per day. By 1950, production from the two wells had dropped to 13 barrels per day. During the fourteen years of production, the two wells have produced a total of 66,898 barrels of oil, and have paid the lessee a profit of $12,600. By decline curve, it is estimated that these two wells will produce after August 1, 1950, approximately 60,000 more barrels of oil.

The lessors' own geologist does not recommend the drilling of a well on the northeast ten acres as a profitable venture. He was of the view that if the producing sands were favorable, a well drilled on the southwest ten acres would produce one-half as much as the two producing wells on the lease; and, that in view of the 3000 foot depth and the market conditions, this should be an "attractive" venture.

A plat of the wells in the area surrounding this lease shows that the northeast ten acres has been offset by a dry hole to the east, and that a well diagonally to the northwest has been abandoned after producing some oil at an "investment loss" of approximately $17,000. A dry hole offsets the southwest ten acres to the south, and to the west there is a well producing about 4 barrels of oil per day. Other wells in the area are producing 10 or less barrels of oil per day.

The evidence conclusively shows that there has been no drainage by wells surrounding the lease because of the particular "gravity drains" in the area, and on trial the lessors abandoned any claim for drainage.

The lessee's geologist testified that in his opinion, favorable sands would not be encountered in drilling operations on either of the undrilled ten acre tracts. He stated that the two producing wells on the lease had, or would, produce some of the oil, if any, underlying the undrilled tracts. An employee in the production department testified that it would cost approximately $23,000 to drill and equip a well, and that because of the low recoveries and poor sand conditions in the area, he did not believe a commercial well could be obtained on either of the undrilled tracts.

Assuming that the lapse of time since the drilling of the last well is sufficient to require the lessee to come forward with satisfactory evidence to excuse the delay, we do not think that the trial court abused its discretion in denying cancellation. For, as we have seen, the implied covenants, equitably enforced, impose no absolute duty on the lessee to drill additional wells in the face of positive proof of unproductivity.

As to the duty to explore deeper horizons, there was evidence showing that the lessee has made a study of the possibilities of deeper producing formations, not only in the Wildcat Jim Pool, but several other pools in Southern Oklahoma, and about one year ago contributed to the drilling of a well to the northwest to test the deeper sands; and, that at trial time the lessee was making studies of all formations, looking toward the drilling of a well in the immediate vicinity to test deeper formations.

We cannot say on this evidence that the trial court's refusal to cancel the lease was clearly erroneous, and the judgment is affirmed.