**B. C. SPARKS, Bettie S. Sparks, Wendell D. Sparks and Trudie S. Wymore, Appellants,**

v.

**MIDSTATES OIL CORPORATION, Jerrold R. Golding, Mrs. Bernice L. Rose and Jan Marie Golding, Appellees.**
**No. 5643.**

United States Court of Appeals
Tenth Circuit.

Jan. 9, 1958.

Rehearing Denied Feb. 3, 1958.

J. E. Williams, Ardmore, Okl. (E. H. Williams and W. J. Williams, of Williams, Williams & Williams, Ardmore, Okl., were with him on the brief), for appellants.

C. H. Rosenstein, of Rosenstein, Fist & Mesirow, Tulsa, Okl. (Hulette F. Aby, Tulsa, Okl., was with him on the brief), for appellees.

Before BRATTON, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

The defendants are the owners of an oil and gas lease on a 70 acre farm in Section 30, Township 2 South, Range 2 West, Carter County, Oklahoma. The plaintiffs, as owners of the mineral rights, brought this action to cancel the lease on the ground that the lessees had not diligently developed and operated the leased premises. Ten acre units were established, and commercial wells have been drilled to the shallow sands on six of the seven tracts. The principal question arose due to the failure of the lessees to test the deeper sands. The trial court held that, except for the shal-

low sands in one 10 acre tract, and the deeper sands in a similar 10 acre tract, the evidence did not show that the lessees had failed to act as prudent operators of the lease, considering the interests of both the lessors and the lessees, and refused to cancel the lease.

In a number of recent cases we have had occasion to consider the prudent operator rule as developed by the Oklahoma courts, and we need not cover this ground again. Magnolia Petroleum Co. v. Wilson, 10 Cir., 215 F.2d 317; Gregg v. Harper-Turner Oil Co., 10 Cir., 199 F.2d 1; Trust Company of Chicago v. Samedan Oil Corp., 10 Cir., 192 F.2d 282. See also Blake v. Texas Co., D.C.E.D.Okl.1954, 123 F.Supp. 73. As pointed out by these cases, the prudent operator rule does not require an oil and gas lessee to undertake additional development of the lease in a proven field unless a prudent operator would do so, and this is determined by whether there is reasonable expectation that the cost of such development, as well as some profit on the investment, might be returned. This test, however, is not exclusive. As was said in Trust Co. of Chicago v. Samedan Oil Corp., supra, [192 F.2d 285] the "likelihood of profitable production may be a factor in determining what a prudent operator would do in the particular circumstances, it is not conclusive of the prudence of his conduct. Even a prudent operator must excuse his unreasonable delay. What constitutes an unreasonable delay 'depends in each case upon the circumstances rather than upon the precise time which has expired.' Skelly Oil Co. v. Boles, supra, [193 Okl. 308, 142 P.2d 969]; Doss Oil Royalty Co. v. Texas Co., supra [192 Okl. 359, 137 P.2d 934]. Thus, one year may be unreasonable in some circumstances, and ten years reasonable in others. Pre-

dominant in all these cases is a conscientious effort to arrive at a just and equitable adjustment of the conflict of the parties to the lease, having in mind the rights and duties imposed by their contract, express or implied. In the ultimate analysis, the question lies with the Chancellor, guided only by the cardinal principles that govern the mutual duty of fair play." A prudent operator may not act only for self-interest. Where there has been an unreasonable delay in developing a lease, the burden is upon the lessee to prove that the delay was that which a prudent operator might have.[1] Neither the lessor nor the lessee is the arbiter of the extent to which, or the diligence with which, the lessee shall proceed, but such question is committed to the sound discretion of the courts to be determined by the facts and circumstances of each case.

This brings us to the application of these principles to the particular facts of this case. The lease was dated May 24, 1921, and was for a term of five years and as long thereafter as oil and gas was produced from the land. Within the primary term, wells were drilled to the shallow sands on all of the 10 acre units except one. In 1925 Well No. 3 was drilled to a deeper sand, but difficulty developed, and it was completed as a producing well primarily from the shallow sands. There was evidence that the production from the deeper sands reached by the original drilling of Well No. 3 would not have been profitable. As of November 21, 1956 these wells had produced approximately 490,000 barrels of oil. As to these six 10 acre units, there can be little doubt but that the shallow sands were fully developed and prudently operated by the lessees. As to the failure of the lessees to drill into the shallow sands on the remaining 10 acre tract, there can be no doubt but

1. In the more recent case of Magnolia Petroleum Co. v. Wilson, 10 Cir., 215 F.2d 317, 319, after an analysis of the Oklahoma and the 10th Circuit decisions, the court said: " * * * From an analysis of these cases, we conclude that the Doss case is still the rule in Oklahoma, as amplified in the Trawick case; that where there has been unreasonable delay in development a prima facie case for cancellation is made out and the burden then shifts to the lessee to establish that a prudent operator would not undertake further development."

that this was not the action of a prudent operator.

In 1951 the lessees, at great expense, participated in the drilling of a test well just south of the lease in question to a total depth of 11,515 feet, which resulted in a dry hole. In the latter part of 1953 there was considerable deeper drilling in the immediate vicinity of the lease. A number of producing wells were drilled directly off-setting the two most southerly 10 acre tracts of the lease. In 1955 the lessees completed Well No. 8 to the deeper sands in the southeast 10 acre tract. The plaintiffs do not contend that the drilling on this tract did not comply with the implied conditions of the lease. The evidence discloses that all of the wells drilled adjacent to the lease came in as fairly good producers, but, in each of them, there was a rapid decline in production after the first few months, and there was doubt if they would continue to be profitable producers. There was some conflict in the evidence, but there was positive evidence that further drilling to the deeper sands at this time would not be profitable and that, in all likelihood, the lessees' cost of drilling would not be returned from production. In settling the questions presented by the failure of the lessees to further develop the deeper sands, the trial court said:

"The deeper sands pose a much more complex problem. In terms of time alone the period of non-development since real activity in the lower sands began in this area does not stand out. The earliest deeper wells in the immediate vicinity were drilled the latter part of 1953. And, most of the deeper production was obtained in 1954 and 1955. In view of the marginal character of many of these vicinal wells the court does not believe that under all the circumstances there has been an outright breach of the implied covenant to further develop all these lower sands thereby calling for a blanket cancellation of the deeper sands. It cannot be said

that the defendants have failed to act as prudent operators, considering the legitimate interests of both the lessors and the lessees by failing to generally exploit the deeper sands on this lease. Although the operator's occupational hazard forever includes the element of chance nonetheless, an operator is not required to *rush* recklessly into shotgun development where no rational expectancy of profit exists.

"However, to completely dispose of all issues touching these deeper sands we must specially consider the two 10 acre tracts in this lease which are directly off-set by deep production, placing particular emphasis upon the implied duty to protect from drainage. The Oklahoma law has drawn no clean-cut distinction between the lessee's duty to develop and the duty to protect against drainage insofar as probable profitability is concerned. In fact, there is language which taken alone indicates that both duties are measured by the same standard. Of course, the basic inquiry is the same; 'what would a prudent operator do under the circumstances?' But further, it seems certain that upon principle the law should require a lessee to evince a higher degree of abnegation where drainage is occurring than where only further development is in view. If draining is taking place and a lessee can reasonably hope for a well which will pay out, his failure to drill and engage at close quarters in a struggle for capture should be deemed something less than prudent. However, without relying exclusively on this distinction the court is of the opinion that in any event the plaintiffs are entitled to some relief as to the deeper sands under the SW/4 of SE/4 (on which the No. 3 well is located.)" (Footnotes omitted.)

Sparks v. Mid-State Oil Corp., D.C.E.D. Okl.1957, 148 F.Supp. 551, 554.

The judgment vacated the lease to the shallow sands on the tract which had not been drilled. It also vacated the lease as to the deeper sands—the tract upon which Well No. 3 was drilled—unless the lessees commenced drilling thereon within 60 days from the date of the judgment, and prosecuted the drilling with due diligence to a total depth of 3,928 feet. It appears to us that the trial court applied the applicable legal principles in an equitable manner and in accordance with Oklahoma law, and we cannot say, from the record, that the court's refusal to cancel the lease further than it did was clearly erroneous.

As to the plaintiffs' contention that the lessees' failure to prevent drainage from the lease constituted grounds for cancellation and damages, we agree with the trial court that the evidence, as of the time of trial, did not warrant such relief.

Affirmed.