NORTH AMERICAN PETROLEUM COMPANY, a co-partnership composed of J. B. Lewin, R. R. Hart, Stanley D. Weiss and James Fishgrund, Plaintiffs in Error,

v.

James D. KNIGHT, E. T. Knight, Lucille L. Knight and Ram Morrison, Defendants in Error.

No. 37794.

Supreme Court of Oklahoma.

Feb. 11, 1958.

Robinson, Shipp, Robertson & Barnes, Leon Shipp, Oklahoma City, for plaintiffs in error.

Ram Morrison, Oklahoma City, for defendants in error.

CORN, Vice Chief Justice.

This is an action by plaintiffs, James D. Knight, E. T. Knight, Lucille L. Knight and Ram Morrison, against the defendant North American Petroleum Company, a co-partnership composed of J. B. Lewin, R. R. Hart, Stanley D. Weiss and James Fishgrund for damages for a breach of the implied covenants of an oil and gas lease, alleging a failure to drill a well on the leasehold, and a failure to protect the leasehold from offset drainage. The parties will be hereafter referred to as they appeared in the trial court.

It is alleged in the petition of the plaintiffs that they are the owners of an eighty acre tract of land and own 14.34 of the production of the royalty. That of the 5th day of February, 1953, they executed an oil and gas lease on said land to the defendants; that the defendants completed an oil well on the SW, SW NW of Section 6–18N–2E in May of 1953. That on or about October 2, 1953 the Mohawk Drilling Company, owner of the West Offset lease, drilled and completed a west ten acre offset well to plaintiffs' land, said well being located in the Northeast, Southeast, Northeast of Section 1–18N–1E and referred to as the Brown No. 2 well. That said Brown No. 2 well has been producing in paying quantities since completion thereof and is subsequently draining plaintiffs' land to their damage and injury. The plaintiffs served notice of demand for a protection well; that the defendants agreed to commence a protection well, but failed to do so. Praying damages in the amount of $25,000.

The defendants' answer alleged that the title to the leasehold is in question and made doubtful by reason of litigation instituted by the plaintiffs pending in the Supreme Court in a cause numbered 36679, and that by reason thereof the defendants had been excused from further development of the leasehold premises; that the Brown lease, which lies directly West of the subject leasehold has produced 35,843.9 barrels of oil since the date on which plaintiffs claim the defendants should have drilled said well; that the lease has two wells thereon and that the Brown No. 2 which is the well plaintiffs claim to be improperly draining their land, has produced not more than half of the production from said lease, or a total of 17,821.9 barrels of oil; that an operator of reasonable prudence would not have drilled the protection well which plaintiffs allege should have been drilled is demonstrated by the fact that the offset well thereto, has produced not more than 18,000 barrels of oil since the date which plaintiffs claim a protection well should have been drilled.

At the close of the evidence the cause was submitted to the jury by a special interrogatory wherein the jury was asked that measured by the prudent operator's test as described in Instruction No. 5, would a prudent operator have drilled the protection well on plaintiffs' land? And by instructions for a general verdict.

The jury answered the special interrogatory "yes" and upon the general instructions, returned a verdict for the plaintiffs in the amount of $10,000.

The first assignment of error is as follows:

"If damages are recoverable, the amount thereof is limited to the drainage sustained from the time a well should have been drilled to the date of the institution of this action."

In reply to defendants' first assignment of error we find the testimony of one petroleum geologist, who qualified as an expert, to the effect that if the Knight Well, No. 2 had been timely drilled and operated in a reasonably prudent manner that it would have produced 58,000 barrels of oil, and the plaintiffs share would have been $22,900. Other expert witnesses testified as to the amount of the share of the plaintiffs, if the

well had been timely drilled and operated in a reasonably prudent manner, would be over $10,000, the amount of the verdict. As the issue of the amount of damages was submitted to the jury under proper instructions of the court, we hold the evidence was sufficient to authorize the jury in returning a verdict for plaintiffs in the amount of $10,000.

■ The next assignment of error is as follows:

"It is an error to allow proof as to production of oil from all wells on an adjoining lease where only one of them, offsets the undrilled location, without evidence that the production from each well was reasonably uniform."

To this alleged error the plaintiffs contend that this evidence concerning the Brown No. 2 well was admitted to better inform the expert witnesses in arriving at an opinion as to what the proposed well, if drilled and operated by a reasonably prudent operator, would have produced so when taken in connection with the other facts and circumstances they could better determine the amount of damages to be assessed. We find no error in this assignment of error.

■ The third assignment of error is:

"There is no duty upon a lessee to drill an offset well unless it appears that he can do so at a profit. The burden of proving that an offset well could be drilled and operated at a profit is upon the plaintiff lessor."

In Junction Oil & Gas Co. v. Pratt, 99 Okl. 14, 225 P. 717 we held:

"Where an oil company leases land from a party for the purpose of prospecting, drilling, developing it for oil and gas purposes, it is the duty of such party to protect the leased premises by offset wells where wells have been drilled on the adjacent properties, so as to protect the leased premises from drainage from the wells on the adjacent property, and a failure to drill such offset wells renders the lessee liable in damages to the lessor."

But the burden of proving that an offset well could be drilled and operated at a profit is upon the plaintiffs.

■ There is a sharp conflict in the expert opinion evidence of this issue. The jury decided the fact question in favor of the plaintiffs, and we are bound under the well established rule that we will not reverse the judgment of the trial court rendered upon a jury verdict, if there is any evidence reasonably tending to support such verdict and judgment.

■ The fourth assignment of error is as follows:

"The court erred in giving to the jury Instruction No. 7. The court erred in giving to the jury Instruction No. 8. The court erred in refusing defendant's requested instruction No. 1. The court erred in refusing to give to the jury defendant's requested instruction No. 2."

Since these errors are so closely related, they are presented under one proposition. Instruction No. 7 is as follows:

"You are instructed that the measure of damages for the breach of an implied covenant to drill protection wells is the value of the lessor's royalty of such oil and gas at the time it should have been produced and marketed. If it has been shown with reasonable certainty that the land covered by the defendants' lease would have produced a certain quantity of oil and gas and that the plaintiffs were entitled to a certain portion of the same, the proper measure of damage is the value of the royalty of the plaintiffs which they did not receive and which they would have received if the oil had been produced and marketed."

The defendants then contend that the measure of damage for breach of an implied covenant to drill a protection well is not the value of the lessors' royalty that would have been produced from said well and

cites in Junction Oil & Gas Co. v. Pratt, supra, as authority.

A fraction of the royalty, 14.34 of the production is all the plaintiffs owned, and the evidence of the expert witnesses was to the amount of the plaintiffs share. Under the evidence in this case we hold the instruction fairly covered this issue.

Judgment affirmed.

HALLEY, JOHNSON, WILLIAMS, BLACKBIRD and CARLILE, JJ., concur.