**H. H. BARNES and Mattie Barnes,**
**Plaintiffs in Error,**

v.

**MACK OIL COMPANY, a corporation;**
**Chester M. Crebbs; The Drilling and Ex-**
**ploration Company, Inc., a corporation;**
**Glen S. Norville; N. W. Brillhart et al.,**
**Defendants in Error.**

No. 39789.

Supreme Court of Oklahoma.

Oct. 9, 1962.

Rehearing Denied Nov. 20, 1962.

Clifford W. Clift, John B. Ogden, Oklahoma City, for plaintiffs in error.

Cund & Garvin, Duncan, for defendants in error.

HALLEY, Justice.

Plaintiffs, H. H. Barnes and Mattie Barnes owners of $^{50}/_{160}$ths mineral interest in a certain 160 acre tract in Caddo County, Oklahoma, on November 20, 1957, commenced this suit against Mack Oil Company and certain other defendants who are lessees of an oil and gas lease on said tract to cancel the lease as to 120 of the 160 acres by reason of an alleged breach of the implied covenants to further develop and operate it. Plaintiffs also sought damages for drainage because of defendants' failure to drill an offset well on plaintiffs' property. Plaintiffs' second amended petition, upon which the suit was tried, was filed in January, 1959.

Upon trial of the suit the trial court rendered judgment favorable to plaintiffs but not to the degree prayed by them. A motion for new trial filed by plaintiffs was overruled and they bring this appeal.

The facts adduced at trial show that plaintiffs' ownership and defendants' lease covers the SE¼ of Section 14, Township 6 North, Range 9 West. Defendants drilled one well on the NW¼ of the SE¼ of Section 14 which was completed in August, 1956. In May, 1957, plaintiffs served notice on defendants demanding that another well be commenced on the lease within sixty days or plaintiffs would sue to cancel the lease. Defendants drilled no other wells on the leased property. The completed well has produced oil and some gas from the Marchant sand located at a depth of approximately 10,700 feet. Other wells drilled in the area also produced oil and gas from the same common source of supply.

Plaintiffs' proof that a reasonably prudent operator would have drilled a well to the Marchant sand on the NE¼ of the SE¼ of Section 14 as an offset to two wells producing from that sand just outside the leased property resulted in the trial court's findings and judgment that plaintiffs were entitled to have the oil and gas lease cancelled down to a depth of 100 feet below the base of the Marchant sand insofar as the lease covered the 120 acres described as the E½ of the SE¼ and the SW¼ of the SE¼ of Section 14. The trial court's findings were that the two nearby wells have drained from under the leased property 910 barrels of royalty oil of a value of $2.67 per barrel, or a total of $2,429.70. By reason of plaintiffs' ownership of $^{50}/_{160}$ths interest in the minerals, they were awarded judgment of $759.28. Defendants do not complain of the judgment as rendered by the trial court. Therefore, no additional discussion of the facts giving rise to the above judgment is necessary except as may be incidental to a discussion of plaintiffs' argument that the judgment of the trial court was too limited in its scope.

Plaintiffs' two claimed errors were that the trial court should have cancelled the lease as to all sands in the 120 acres and that the trial court failed to award a sufficient amount of damages for drainage.

In support of their contention that the trial court erred in failing to cancel the lease as to all sands in the 120 acres, plaintiffs cite and quote from but two cases: Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934; and McKenna v. Nichlos, 193 Okl. 526, 145 P.2d 957.

The facts of each of the cited cases are different from the significant facts of the instant case. In the Doss Oil Royalty Co. case, supra, the defendant had held substantial undeveloped portions of the leases for over fourteen years without drilling a single well thereon on the theory that further development of drilling sites to the known producing sand was not required because circumstances had not indicated that such development would be profitable.

We pointed out that such attempts to indefinitely freeze the undeveloped portions of oil and gas leases and hold them for speculative purposes is universally condemned. In the McKenna case, supra, the defendant had not only failed for a period of thirteen years to drill additional wells to develop the known producing sand but defendant's testimony concerning exploratory drilling to deeper sands was merely that he intended to drill "whenever conditions justified it" and that he desired to hold the lease "until there is more certainty of production from deeper sand." There was apparently no evidence in the case of a diligent search by the defendant for knowledge and information concerning drilling to deeper sands. Even in that case, however, this Court granted the defendant sixty days within which to commence drilling a well to the deeper sands, and in the event such well was not commenced the lease was to be cancelled as to the deep sands as well as the shallow sands.

In cases where the lessor seeks cancellation of an oil and gas lease for alleged breach of implied covenants, this Court must look to the facts and circumstances of each case. Doss Oil Royalty Co. v. Texas Co., supra; Shell Oil Co. v. Howell, 208 Okl. 598, 258 P.2d 661.

Some of the pertinent facts in the instant case are that for approximately two years prior to the hearing in March, 1960, defendants had been in contact with Gulf Oil Corporation and Tidewater Associated Oil Company concerning drilling a well to a projected depth of 16,000 feet to test the Springer formation. The first such test well was proposed to be drilled in the NW¼ of Section 29, Township 6 North, Range 8 West in Grady County, Oklahoma, which is between two and three miles from the nearest boundary of plaintiffs' property. The three interested groups (defendants, Gulf and Tidewater) had during the two years secured leases on all the property in a twelve section area within which plaintiffs' property is located, except for about 10 or 20 acres. Defendants had expended approximately $25,000.00 in securing their part of such leases. At a later hearing in March, 1961, defendants showed that they had entered into agreement with Gulf (the operator on drilling the test well) whereby defendants obligated themselves to pay 14.9393% of the cost of drilling the deep well. At the time of this latter hearing the well had been drilled to a depth of 17,000 feet at a cost through December, 1960, of $636,732.00 and it was estimated that it would cost an additional $350,000.00 in order to complete it. This first deep well was being drilled on a unitized area of four sections which does not include the plaintiffs' property. Even if the first deep test was not a commercial producer, a second deep test would probably be drilled in the twelve section area with defendants to share in the expenses. If the first or second well should be profitable, the twelve section area would probably be developed in an orderly pattern on a spacing of one well to each 640 acres. It takes an average of about eight months to drill each one of these deep wells.

Plaintiffs asked the trial court to enter its judgment in an alternative manner which would require defendants to commence a well to deeper sands within a certain time or suffer cancellation as to the sands below the Marchant sand. Plaintiffs on appeal urge that it was error for the trial court to refuse to enter such alternative judgment and cite McKenna v. Nichlos, supra, as authority.

The case of Shell Oil Co. v. Howell, supra, is much more in point. In that case the trial court entered an alternative judgment which we reversed on appeal. There, as in the instant case, we had abundant proof of the lessee's disposition to investigate formations believed to exist at lower depths. There, as here, the lessee sought aid and financial assistance of other lessees in drilling an exploratory well to deeper sands on a lease near lessor's property. Concerning the wisdom of requiring a lessee

to commence a well within a set period of time, we said:

" * * * On the other hand, we believe · that said company should be free to use what devices it may have or be able to procure for the lease's further development, and not be shackled with a court order or judgment which nowhere therein provides, for the purpose it presumably is calculated to accomplish, any means for extensions of time for commencement of operations, if the necessity therefor should arise; and which, as is indicated by the evidence in this case, tends to cast a legal cloud or question of uncertainty as to the duration of the lease and to 'chill' the inclinations of those who might assist the company in such project, thus limiting or restricting its opportunities of accomplishing further development in a competent and prudent manner."

See also Shell Oil Co. v. Lee, Okl., 258 P.2d 666; Skelly Oil Co. v. Boles, 193 Okl. 308, 142 P.2d 969; Carter Oil Co. v. Mitchell, 100 F.2d 945 (10th Cir.).

The facts and circumstances of the instant case support the judgment rendered by the trial court concerning cancellation of a portion of the oil and gas lease involved and such judgment is not against the clear weight of the evidence.

█ Next we come to plaintiffs' complaint that the amount of the judgment for drainage was erroneous. Plaintiffs in their brief quoted from the testimony of expert witnesses for both plaintiffs and defendants on this aspect of the case. Plaintiffs then argue that since their witness was disinterested, while all the other witnesses were either stockholders, officials or employees of the defendant corporation, the trial court should not have disregarded the testimony of plaintiffs' witness that plaintiffs' damages amounted to $5,300.00.

We need say only that defendants presented competent testimony that the wells which were allegedly draining plaintiffs'

property, during the time material herein, produced approximately 180,000 barrels of oil at a net value of approximately $2.67 per barrel. The witness estimated that between 3% and 5% of the oil produced was drainage from plaintiffs' property. Thus, there was sufficient competent evidence as to the amount of the drainage upon which the trial court made its findings and judgment as set out at the beginning of this opinion. Junction Oil & Gas Co. v. Pratt, 99 Okl. 14, 225 P. 717; North American Petroleum Co. v. Knight, Okl., 321 P.2d 964.

Judgment affirmed.